**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

HIGH IQ NETWORKS LLC,

      *Plaintiff,*

v.

NOKIA CORPORATION,
NOKIA OF AMERICA CORPORATION, and
NOKIA SOLUTIONS AND NETWORKS OY,

      *Defendants.*

Case No. 2:26-cv-00199

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff High IQ Networks LLC ("Plaintiff" or "High IQ") makes the following allegations against Defendants Nokia Corporation; Nokia of America Corporation; and Nokia Solutions and Networks Oy (collectively referred to as "Defendants" or "Nokia"):

## INTRODUCTION

1. This complaint arises from Defendants' unlawful infringement of the following United States patents owned by Plaintiff, which generally relate to network communication technology: United States Patent Nos. 6,731,607 (the "'607 Patent"), 6,952,397 (the "'397 Patent"), 7,283,478 (the "'478 Patent"), 7,660,303 (the "'303 Patent"), 7,697,532 (the "'532 Patent"), 7,808,931 (the "'931 Patent"), 7,876,673 (the "'673 Patent"), and 8,009,684 (the "'684 Patent") (the "Asserted Patents" or the "Patents-in-Suit").

2. The Asserted Patents in this action represent foundational innovations in carrier-grade network communication technology. The inventions arose from pioneering research and

development efforts in the field of packet-based network transport, ring network architectures, and Ethernet-based access multiplexing systems that have become essential building blocks of modern telecommunications infrastructure.

3.　　For decades, telecommunications carriers relied on legacy time-division multiplexing ("TDM") and Synchronous Optical Networking ("SONET") / Synchronous Digital Hierarchy ("SDH") ring architectures to transport voice and data traffic across metropolitan and access networks. These legacy systems, while highly reliable, were rigid, bandwidth-inefficient, and costly to operate and maintain. As demand for data services grew exponentially with the rise of the Internet, the telecommunications industry recognized the urgent need to transition from circuit-switched TDM networks to packet-based Ethernet transport networks that could more efficiently allocate bandwidth and support diverse data services.

4.　　This transition from legacy TDM to packet-based Ethernet transport presented formidable engineering challenges. Engineers needed to develop new protocols and architectures that could deliver the carrier-grade reliability, protection switching, and quality of service guarantees expected of telecommunications networks while leveraging the cost efficiency and flexibility of Ethernet technology. Among the most significant challenges were: designing resilient ring network topologies for Ethernet transport; developing efficient mechanisms for network interface auto-configuration in access multiplexing systems; engineering traffic management systems for bidirectional ring networks; enabling point-to-multipoint functionality within bridged network environments; and creating high-capacity ring communication architectures capable of serving modern bandwidth demands.

5.　　The inventors whose work is at issue in this case—working at Orckit Communications Ltd. and Corrigent Systems Ltd. (later Orckit-Corrigent Ltd.)—were among the

pioneers who solved these challenges. Through years of intensive research and development and the investment of substantial resources, these engineers developed breakthrough innovations in carrier Ethernet transport, ring network protection, frame concatenation, traffic engineering, and network management that enabled the transition from legacy TDM networks to modern packet-based telecommunications infrastructure.

6.    Corrigent Systems Ltd., in particular, was a recognized leader in carrier Ethernet transport solutions, developing commercial products based on the patented technologies at issue here. Corrigent's technology was deployed by telecommunications carriers worldwide and was widely recognized within the industry for its innovative approach to resilient packet ring networking and Ethernet-based access and metro transport.

7.    The Asserted Patents cover specific, claimed inventions that address key aspects of this technological evolution, including network interface auto-configuration for access multiplexing systems, communication protocols for bidirectional ring networks, traffic engineering methods for ring topologies, point-to-multipoint bridged network functionality, frame concatenation with quality-of-service management, high-capacity ring communication architectures, and methods for preventing frame duplication in interconnected ring networks. These patented innovations are now widely practiced in modern telecommunications network infrastructure, including in the network communication products and systems manufactured, sold, and deployed by Defendants.

8.    Defendants manufacture, sell, use, test, and deploy a comprehensive portfolio of network infrastructure products and systems—including carrier Ethernet switches, IP/MPLS routers, optical networking equipment, and access/aggregation platforms—that implement the patented technologies described herein. Defendants have built a substantial business selling

network infrastructure solutions to telecommunications carriers, enterprises, and government entities worldwide, including throughout the State of Texas and the Eastern District of Texas, that practice the inventions claimed in the Asserted Patents.

## THE PARTIES

9.      Plaintiff High IQ Networks LLC is a Delaware limited liability company with a principal place of business at 2435 N. Central Expressway, Suite 1200, Richardson, Texas 75080.

10.     On information and belief, Defendant Nokia Corporation is a Finnish corporation organized and existing under the laws of Finland, with a principal place of business at Karakaari 7, 02610 Espoo, Finland. On information and belief, Nokia Corporation conducts business within the United States, including within Texas, and by and through Nokia of America Corporation.

11.     On information and belief, Defendant Nokia Solutions and Networks Oy is a corporation organized and existing under the laws of Finland. Nokia Solutions and Networks Oy has been registered to do business in Texas since May 30, 2008, with a mailing address at 3201 Olympus Blvd, Coppell, Texas 75019. Nokia Solutions and Networks Oy has as its registered agent for service: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. On information and belief, Nokia Solutions and Networks Oy is a wholly owned subsidiary of Nokia Corporation, the ultimate parent corporation.

12.     On information and belief, Defendant Nokia of America Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 3201 Olympus Boulevard, Dallas, Texas 75019,

13.     On information and belief, Nokia of America Corporation has as its registered agent for service: Prentice Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701. Nokia of America Corporation has been registered to do business in the State of Texas since December 29, 1995. Defendant Nokia of America Corporation provides communications,

technology, and information products and services to consumers, businesses, and government entities throughout the State of Texas, including the Eastern District of Texas, including making, using, selling, offering for sale, or importing network infrastructure products, services, and equipment in the Eastern District of Texas. On information and belief, Defendant Nokia of America Corporation also has multiple offices in Texas, including an office within the Eastern District of Texas, located at 2525 Highway 121, Lewisville, Texas 75056. On information and belief, Defendant Nokia of America Corporation is an indirect wholly owned subsidiary of Nokia Corporation, the ultimate parent corporation.

14.     On information and belief, Nokia's operations in the Eastern District of Texas are substantial and varied, including its offices located at 2525 Highway 121, Lewisville, Texas 75056. On information and belief, between October 2013 and March 2026, there are approximately 2,855 bills of lading on file for Nokia Solutions and Networks Oy at this location and 1,526 bills of lading on file between November 21, 2017, and March 5, 2026 for Nokia of America Corporation at 601 Data Drive, Plano, Texas 75075. Nokia has offices in the Eastern District of Texas where it sells and/or markets its products, including its offices in Lewisville and Plano, Texas.

15.     Moreover, on information and belief, Nokia has additional regular and established places of business in this District, such as a Nokia facility in Plano, Texas that has been used as a training center and a data center also located in Plano, Texas.[1]

16.     The Defendants hold themselves out as a single "Nokia" company, as exemplified by the company's website, www.nokia.com, where Defendants offer for sale and sell the infringing

---

[1] See *IPCom, Gmbh & Co. KG v. AT&T Corp., Defendant, and Nokia of Am. Corp., Intervenor*, 2:20-cv-00322-JRG, D.I. 47, ¶¶ 61-63 (Nokia admitting that "it conducts business operations within the Eastern District of Texas" including a "Nokia facility in Plano, Texas" and "a data center in Plano.").

products and services, and in Nokia's Annual Form 20-F filings with the U.S. Securities and Exchange Commission.

17.    By registering to conduct business in Texas and by maintaining facilities in at least the cities of Plano and Lewisville, Nokia has multiple regular and established places of business within the Eastern District of Texas.

## JURISDICTION AND VENUE

18.    This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

19.    This Court has personal jurisdiction over the Defendants in this action because Defendants have committed acts within this District giving rise to this action, and have established minimum contacts with this forum such that the exercise of jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the Asserted Patents, and inducing others to infringe the Asserted Patents in this District. Defendants are directly, and through intermediaries, making, using, selling, offering for sale, distributing, advertising, promoting, and otherwise commercializing their infringing products in this District. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to the residents of this District and the State of Texas. Defendants are subject to jurisdiction pursuant to due process and/or the Texas Long Arm Statute due to their substantial business in this State and District including at least their infringing activities, regularly doing or soliciting business at their Texas

facilities, and engaging in persistent conduct and deriving substantial revenues from goods and services provided to residents in the State of Texas including the Eastern District of Texas.

20.     Nokia, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more infringing products and/or services in the stream of commerce with the intention and expectation that they will be purchased and used by consumers and telecommunications carriers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

21.     Alternatively, to the extent Defendants Nokia Corporation and Nokia Solutions and Networks Oy contend they are not subject to personal jurisdiction in any single state's courts, this Court has personal jurisdiction over those Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), because Plaintiff's claims arise under federal law and each of those Defendants has sufficient contacts with the United States as a whole—including importing, offering to sell, and selling infringing products throughout the United States, and directing commercial activity to U.S. customers—to satisfy constitutional due process requirements.

22.     Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant Nokia of America Corporation maintains a regular and established place of business in this District, including at 2525 Highway 121, Lewisville, Texas 75056, and has committed acts of infringement in this District. Venue is also proper under 28 U.S.C. § 1391(c)(3) as to foreign defendants Nokia Corporation and Nokia Solutions and Networks Oy. Additionally, on information and belief, Defendants have transacted business in this District and have committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the Asserted Patents. Defendants have solicited business in the Eastern District of Texas, transacted business within this District, and attempted to derive financial

benefit from the residents of this District, including benefits directly related to Nokia's infringement of the Asserted Patents.

23.    Venue is proper as to Defendant Nokia Corporation under 28 U.S.C. § 1391(c)(3) as a corporation that is not resident in the United States.

24.    Venue is proper as to Defendant Nokia Solutions and Networks Oy under 28 U.S.C. § 1391(c)(3) as a corporation that is not resident in the United States.

25.    Venue is proper as to Nokia of America Corporation because it maintains a regular and established place of business in the Eastern District of Texas, including offices located at 2525 Highway 121, Lewisville, Texas 75056 and 601 Data Drive, Plano, Texas 75075. Nokia has operated the Plano office as a "NokiaEDU Training Center," which it describes as "the company's premier learning organization serving customers, partners and employees worldwide… to deliver [ ] a top-quality learning experience tailored to our customers' specific requirements and preferences."[2]

26.    In other recent actions filed in this District, Nokia has admitted that its wholly owned subsidiary Nokia of America Corporation has offices located at 2525 South Highway 121, Lewisville, Texas, and further admits that it has offices in the Eastern District of Texas where it sells and/or markets its products, including offices in Lewisville. *See K.Mizra LLC v. Nokia Corporation aka Nokia of America Corporation et al*., Case No. 2:24-cv-00974-JRG (E.D. Tex.), Dkt. No. 20 (Nokia of America Corporation's Answer to Complaint, Mar. 10, 2025), ¶¶ 9-14 ("Nokia admits that NoAC has transacted business in the Eastern District of Texas. Nokia admits that NoAC has offices located at 2525 South Highway 121, Lewisville, Texas 75056. Nokia further

---

[2] https://learningstore.nokia.com/locations/files/US-Plano.pdf

admits that NoAC has offices in the Eastern District of Texas where NoAC sells and/or markets its products, including offices in Lewisville, Texas.").

27.    Furthermore, in the *K.Mizra LLC v. Nokia Corporation aka Nokia of America Corporation et al*. action, Defendants did not dispute that venue was proper in this District for Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia of America Corporation.

## THE ASSERTED PATENTS

28.    On May 4, 2004, United States Patent No. 6,731,607 B1 ("the '607 Patent"), entitled "Network Interface Auto-Configuration in an Access Multiplexing System," was duly and legally issued by the USPTO. A true and correct copy of the '607 Patent is attached hereto as Exhibit 1. The '607 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '607 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

29.    On October 4, 2005, United States Patent No. 6,952,397 B2 ("the '397 Patent"), entitled "Communication in a Bidirectional Ring Network with Single-Direction Receiving," was duly and legally issued by the USPTO. A true and correct copy of the '397 Patent is attached hereto as Exhibit 2. The '397 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '397 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages

for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

30.      On October 16, 2007, United States Patent No. 7,283,478 B2 ("the '478 Patent"), entitled "Traffic Engineering in Bi-Directional Ring Networks," was duly and legally issued by the USPTO. A true and correct copy of the '478 Patent is attached hereto as Exhibit 3. The '478 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '478 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

31.      On February 9, 2010, United States Patent No. 7,660,303 B2 ("the '303 Patent"), entitled "Point-to-Multipoint Functionality in a Bridged Network," was duly and legally issued by the USPTO. A true and correct copy of the '303 Patent is attached hereto as Exhibit 4. The '303 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '303 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

32.     On April 13, 2010, United States Patent No. 7,697,532 B2 ("the '532 Patent"), entitled "Frame Concatenation with Drop Precedence Assignment," was duly and legally issued by the USPTO. A true and correct copy of the '532 Patent is attached hereto as Exhibit 5. The '532 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '532 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

33.     On October 5, 2010, United States Patent No. 7,808,931 B2 ("the '931 Patent"), entitled "High Capacity Ring Communication Network," was duly and legally issued by the USPTO. A true and correct copy of the '931 Patent is attached hereto as Exhibit 6. The '931 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '931 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

34.     On January 25, 2011, United States Patent No. 7,876,673 B2 ("the '673 Patent"), entitled "Prevention of Frame Duplication in Interconnected Ring Networks," was duly and legally issued by the USPTO. A true and correct copy of the '673 Patent is attached hereto as Exhibit 7.

The '673 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '673 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

35.    On August 30, 2011, United States Patent No. 8,009,684 B2 ("the '684 Patent"), entitled "High Capacity Ring Communication Network," was duly and legally issued by the USPTO. A true and correct copy of the '684 Patent is attached hereto as Exhibit 8. The '684 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. High IQ Networks LLC is the exclusive owner by assignment of all rights, title, and interest in the '684 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the Patents-in-Suit. None of the Defendants has a license to any of the Patents-in-Suit, either expressly or implicitly, nor does any Defendant enjoy or benefit from any rights in or to any of the Patents-in-Suit whatsoever.

36.    Plaintiff has complied with the requirements of 35 U.S.C. § 287 for the Asserted Patents, to the extent required by law.

## THE ACCUSED INSTRUMENTALITIES

37.    The terms "Accused Instrumentalities" or "Accused Products" refer to all products manufactured, used, tested, imported, sold, or offered for sale by or on behalf of Defendants practicing the Asserted Patents and all processes employed by Defendants that practice the Patents-

in-Suit, including, but not limited to, Defendants' carrier-grade telecommunications networking equipment and associated software, encompassing IP edge and core service routers, service aggregation routers, interconnect routers, Ethernet service switches, service access switches, optical transport and photonic switching platforms, packet transport nodes, broadband access multiplexers and DSLAMs, multi-access gateways, and network provisioning and management systems.  These products are designed for and deployed in service provider and enterprise networks to deliver IP/MPLS routing, Carrier Ethernet switching, optical transport, and broadband access services, and they run on Nokia's SR OS and SR Linux software platforms.  Functionally, the accused products implement ring-topology network communication — including bidirectional ring formation, auto-configuration, topology discovery, traffic engineering, ring protection switching (e.g., ITU-T G.8032 ERPS), packet encapsulation with quality-of-service management, multi-ring interconnection with frame duplication prevention, and ringlet selection based on packet header fields — which are the core functionalities covered by the eight asserted patents. The accused product lines span approximately 37 distinct Nokia product families comprising roughly 68 product-patent combinations across the eight Asserted Patents.

38.     Specifically, and without the benefit of non-public information, Plaintiff identifies the following products manufactured, used, sold, offered for sale, and/or imported into the United States by Defendants as accused instrumentalities that infringe one or more claims of U.S. Patent Nos. 6,731,607; 6,952,397; 7,283,478; 7,660,303; 7,697,532; 7,808,931; 7,876,673; and 8,009,684. This schedule includes all current, maintenance-mode, and legacy/discontinued products for which infringement evidence has been identified. Discontinued products remain relevant for damages accruing during their respective periods of sale and use. The Accused Instrumentalities include without limitation the following:

- Nokia 7750 SR Service Router (including MC-Ring Layer 2, G.8032 Ethernet Ring, and EVPN Designated Forwarder Election configurations)
- Nokia 7950 XRS Core Router
- Nokia 7250 IXR
- Nokia 7250 IXR-R6 Router
- Nokia 7220 IXR
- Nokia 7705 SAR (Service Aggregation Router)
- Nokia 7210 SAS (Service Access Switch)
- Nokia 1830 PSS (Photonic Service Switch)
- Nokia 1830 PSS/PSI-L Optical Line Systems
- Nokia 1830 PSS 1/10/25/100G Line Cards
- Nokia 1830 PSS-24x CE Switch Cards
- Nokia 1830 PSS CE Universal Card (Model 18CE300)
- Nokia 1830 PSS-24x 1T Uplink (Model 4UC1T)
- Nokia 1830 PSS-4
- Nokia 1830 PSS-8
- Nokia 1830 PSS-16
- Nokia 1830 PSS-32
- Nokia 1830 PSS-4II
- Nokia 1830 PSS-16II
- Nokia 1830 PSS-64
- Nokia 1830 PSI (Photonic Service Interconnect)
- Nokia 1830 PSI-L
- Nokia 1830 PSI-M
- Nokia 7090 Packet Transport
- Nokia 7100 Packet Optical Transport
- Nokia 5520 PTN (Packet Transport Node)
- Nokia Coherent Routing Solution
- Nokia Multi-Access Gateway (MAG)
- Nokia 5529 Access Provisioning Center
- Nokia Lightspan MF
- Nokia 7360 ISAM FX
- Nokia 7450 ESS (Ethernet Service Switch)

**NOTE**: The foregoing list of Accused Instrumentalities is based on publicly-available information presently available to Plaintiff and is not intended to be, and shall not be construed as, an exhaustive or limiting identification of all Nokia products, services, systems, features, configurations, software, firmware, or combinations thereof that infringe one or more claims of the Asserted Patents. Plaintiff reserves the right to supplement, amend, or modify this list at any

time, including but not limited to: (a) adding additional accused products, product families, sub-models, variants, successors, or rebranded versions identified through fact discovery, expert analysis, or other investigation; (b) adding predecessor, legacy, or discontinued products for which damages may be recoverable during the applicable infringement period; (c) identifying additional infringing features, modes of operation, or configurations within the products already listed; and (d) identifying third-party products, systems, or services that incorporate, utilize, or operate in conjunction with the accused Nokia products in a manner that constitutes direct or indirect infringement. Nothing in this identification shall be deemed an admission that the listed products are the only infringing instrumentalities, nor shall the omission of any product be construed as an acknowledgment of non-infringement. Plaintiff reserves the right to amend this list upon receiving substantive discovery in the litigation.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 6,731,607

39.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

40.    Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine of equivalents infringed at least one claim of the '607 Patent during its term by making, using, testing, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities. The '607 Patent expired on approximately October 2022, and Plaintiff seeks damages only for infringement occurring before that date.

41.    Defendants, under 35 U.S.C. § 271(b), induced third parties, including telecommunications carriers, enterprise customers, and network operators in this District and

throughout the United States, to directly infringe at least one claim of the '607 Patent by using the Accused Products in an infringing manner during the term of the '607 Patent.

42.    Defendants' inducement was knowing and intentional during the term of the '607 Patent. Defendants took active steps to encourage infringing use, including by providing documentation, technical manuals, configuration guides, deployment assistance, training, and technical support that instructed customers and users how to deploy, configure, and operate the Accused Products in an infringing manner.

43.    On information and belief, Defendants have had knowledge of the Asserted Patents at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S. Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

44.    On information and belief, Defendants contributorily infringed the '607 Patent pursuant to 35 U.S.C. § 271(c) during its term. With knowledge of the '607 Patent, Defendants made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constituted a material part of the patented invention, were especially made or especially adapted for use in an infringing manner, and were not staple articles or commodities of commerce suitable for substantial noninfringing use.

45.    On information and belief, Defendants' users and customers directly infringed the '607 Patent during its term when they used the Accused Products as intended by Defendants

to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

46.     On information and belief, during the term of the '607 Patent, Defendants provided and disseminated information and technical support, including promotional materials, online documentation, product datasheets, configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encouraged and assisted customers and users to engage in the infringing use described above.

47.     Defendants' acts of direct, induced, and contributory infringement of the '607 Patent occurred in the United States, including in this District, during the term of the '607 Patent and injured and damaged Plaintiff.

48.     Alternatively, during the term of the '607 Patent, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '607 Patent but took deliberate actions to avoid learning of these facts.

49.      On information and belief, Defendants' Accused Products were available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District, during the term of the '607 Patent.

50.     Defendants have injured and damaged Plaintiff by their infringement of one or more claims of the '607 Patent during its term. Because the '607 Patent has expired, Plaintiff does not seek injunctive relief with respect to this patent.

51.     Defendants' infringement of the '607 Patent was willful from the time Defendants obtained knowledge of the '607 Patent through the expiration of the '607 Patent on approximately October 2022. Defendants' knowledge includes, no later than Alcatel-Lucent's

forward citation of the application leading to the '303 Patent during prosecution of its own patents, which institutional knowledge Nokia acquired upon its 2016 acquisition of Alcatel-Lucent. Such willful conduct during the term of the '607 Patent merits enhanced damages pursuant to 35 U.S.C. § 284.

52.      A representative claim chart attached hereto as Exhibit 9 describes how the elements of claim 1 of the '607 Patent are practiced by one of the Accused Instrumentalities. This provides details regarding only one example of Defendants' infringement, and only as to a single independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

53.      Plaintiff has suffered damages as a result of Defendants' infringement of the '607 Patent during its term. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for Defendants' past infringement, but no less than a reasonable royalty.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 6,952,397

54.      Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

55.      Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine of equivalents infringed at least one claim of the '397 Patent during its term by making, using, testing, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities. The '397 Patent expired on approximately November 2023, and Plaintiff seeks damages only for infringement occurring before that date.

56.     Defendants, under 35 U.S.C. § 271(b), induced third parties, including telecommunications carriers, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least one claim of the '397 Patent by using the Accused Products in an infringing manner during the term of the '397 Patent.

57.     Defendants' inducement was knowing and intentional during the term of the '397 Patent. Defendants took active steps to encourage infringing use, including by providing documentation, technical manuals, configuration guides, deployment assistance, training, and technical support that instructed customers and users how to deploy, configure, and operate the Accused Products in an infringing manner.

58.     On information and belief, Defendants have had knowledge of the Asserted Patents at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S. Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

59.     On information and belief, Defendants contributorily infringed the '397 Patent pursuant to 35 U.S.C. § 271(c) during its term. With knowledge of the '397 Patent, Defendants made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constituted a material part of the patented invention, were especially made or especially adapted for use in an infringing manner, and were not staple articles or commodities of commerce suitable for substantial noninfringing use.

60.     On information and belief, Defendants' users and customers directly infringed the '397 Patent during its term when they used the Accused Products as intended by Defendants to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

61.     On information and belief, during the term of the '397 Patent, Defendants provided and disseminated information and technical support, including promotional materials, online documentation, product datasheets, configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encouraged and assisted customers and users to engage in the infringing use described above.

62.     Defendants' acts of direct, induced, and contributory infringement of the '397 Patent occurred in the United States, including in this District, during the term of the '397 Patent and injured and damaged Plaintiff.

63.     Alternatively, during the term of the '397 Patent, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '397 Patent but took deliberate actions to avoid learning of these facts.

64.      On information and belief, Defendants' Accused Products were available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District, during the term of the '397 Patent.

65.     Defendants have injured and damaged Plaintiff by their infringement of one or more claims of the '397 Patent during its term. Because the '397 Patent has expired, Plaintiff does not seek injunctive relief with respect to this patent.

66.     Defendants' infringement of the '397 Patent was willful from the time Defendants obtained knowledge of the '397 Patent through the expiration of the '397 Patent on approximately November 2023. Defendants' knowledge includes, no later than Alcatel-Lucent's forward citation of the application leading to the '303 Patent during prosecution of its own patents, which institutional knowledge Nokia acquired upon its 2016 acquisition of Alcatel-Lucent. Such willful conduct during the term of the '397 Patent merits enhanced damages pursuant to 35 U.S.C. § 284.

67.     A representative claim chart attached hereto as Exhibit 10 describes how the elements of claim 9 of the '397 Patent are practiced by one of the Accused Instrumentalities. This provides details regarding only one example of Defendants' infringement, and only as to a single independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

68.     Plaintiff has suffered damages as a result of Defendants' infringement of the '397 Patent during its term. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for Defendants' past infringement, but no less than a reasonable royalty.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 7,283,478

69.     Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

70.     Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine of equivalents infringed at least one claim of the '478 Patent during its term by making, using, testing, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities. The '478 Patent expired on approximately May 2025, and Plaintiff seeks damages only for infringement occurring before that date.

71.     Defendants, under 35 U.S.C. § 271(b), induced third parties, including telecommunications carriers, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least one claim of the '478 Patent by using the Accused Products in an infringing manner during the term of the '478 Patent.

72.     Defendants' inducement was knowing and intentional during the term of the '478 Patent. Defendants took active steps to encourage infringing use, including by providing documentation, technical manuals, configuration guides, deployment assistance, training, and technical support that instructed customers and users how to deploy, configure, and operate the Accused Products in an infringing manner.

73.     On information and belief, Defendants have had knowledge of the Asserted Patents at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S. Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

74.     On information and belief, Defendants contributorily infringed the '478 Patent pursuant to 35 U.S.C. § 271(c) during its term. With knowledge of the '478 Patent, Defendants made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constituted a material part of the patented invention, were especially made or especially adapted for use in an infringing manner, and were not staple articles or commodities of commerce suitable for substantial noninfringing use.

75.    On information and belief, Defendants' users and customers directly infringed the '478 Patent during its term when they used the Accused Products as intended by Defendants to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

76.    On information and belief, during the term of the '478 Patent, Defendants provided and disseminated information and technical support, including promotional materials, online documentation, product datasheets, configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encouraged and assisted customers and users to engage in the infringing use described above.

77.    Defendants' acts of direct, induced, and contributory infringement of the '478 Patent occurred in the United States, including in this District, during the term of the '478 Patent and injured and damaged Plaintiff.

78.    Alternatively, during the term of the '478 Patent, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '478 Patent but took deliberate actions to avoid learning of these facts.

79.    On information and belief, Defendants' Accused Products were available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District, during the term of the '478 Patent.

80.    Defendants have injured and damaged Plaintiff by their infringement of one or more claims of the '478 Patent during its term. Because the '478 Patent has expired, Plaintiff does not seek injunctive relief with respect to this patent.

81.    Defendants' infringement of the '478 Patent was willful from the time Defendants obtained knowledge of the '478 Patent through the expiration of the '478 Patent on approximately May 2025. Defendants' knowledge includes, no later than Alcatel-Lucent's forward citation of the application leading to the '303 Patent during prosecution of its own patents, which institutional knowledge Nokia acquired upon its 2016 acquisition of Alcatel-Lucent. Such willful conduct during the term of the '478 Patent merits enhanced damages pursuant to 35 U.S.C. § 284.

82.    A representative claim chart attached hereto as Exhibit 11 describes how the elements of claim 1 of the '478 Patent are practiced by one of the Accused Instrumentalities. This provides details regarding only one example of Defendants' infringement, and only as to a single independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

83.    Plaintiff has suffered damages as a result of Defendants' infringement of the '478 Patent during its term. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for Defendants' past infringement, but no less than a reasonable royalty.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 7,660,303

84.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

85.    Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine of equivalents infringe at least one claim of the '303 Patent by making, using, testing, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

86.    Defendants, under 35 U.S.C. § 271(b), have induced and continue to induce third parties, including telecommunications carriers, enterprise customers, and network operators in

this District and throughout the United States, to directly infringe at least one claim of the '303 Patent by using the Accused Products in an infringing manner.

87.    Defendants' inducement is knowing and intentional. Defendants have taken active steps to encourage infringing use, including by providing documentation, technical manuals, configuration guides, deployment assistance, training, and technical support that instruct customers and users how to deploy, configure, and operate the Accused Products in an infringing manner.

88.    On information and belief, Defendants have had knowledge of the '303 Patent at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S. Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

89.    On information and belief, Defendants have contributorily infringed and continue to contributorily infringe the '303 Patent pursuant to 35 U.S.C. § 271(c). With knowledge of the '303 Patent, Defendants have made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constitute a material part of the patented invention, are especially made or especially adapted for use in an infringing manner, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

90.    On information and belief, Defendants' users and customers directly infringe the '303 Patent without limitation when they use the Accused Products as intended by

Defendants to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

91.     On information and belief, Defendants provide and disseminate information and technical support, including promotional materials, online documentation, product datasheets, configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encourage and assist customers and users to engage in the infringing use described above.

92.     Defendants' acts of direct, induced, and contributory infringement have occurred and continue to occur in the United States, including in this District, and have injured and damaged Plaintiff.

93.     Alternatively, since at least the date of this Complaint, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '303 Patent but took deliberate actions to avoid learning of these facts.

94.      On information and belief, Defendants' Accused Products were and are available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District.

95.     Defendants have irreparably injured and damaged Plaintiff by infringing one or more claims of the '303 Patent.

96.     Defendants' infringement of the '303 Patent has been willful at least from the time Defendants obtained knowledge of the '303 Patent, including no later than the filing of this Complaint and before based on Alcatel-Lucent's forward citation of the application leading to the '303 Patent during prosecution of its own patents. Nokia acquired this institutional

26

knowledge upon its 2016 acquisition of Alcatel-Lucent, and such conduct merits enhanced damages pursuant to 35 U.S.C. § 284.

97.     A representative claim chart attached hereto as Exhibit 12 describes how the elements of claim 11 of the '303 Patent are practiced by one of the Accused Instrumentalities. This provides details regarding only one example of Defendants' infringement, and only as to a single independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

98.     Plaintiff has suffered and continues to suffer damages as a result of Defendants' infringement of the '303 Patent. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 7,697,532

99.     Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

100.    Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine of equivalents infringe at least one claim of the '532 Patent by making, using, testing, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

101.    Defendants, under 35 U.S.C. § 271(b), have induced and continue to induce third parties, including telecommunications carriers, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least one claim of the '532 Patent by using the Accused Products in an infringing manner.

102.     Defendants' inducement is knowing and intentional. Defendants have taken active steps to encourage infringing use, including by providing documentation, technical manuals, configuration guides, deployment assistance, training, and technical support that instruct customers and users how to deploy, configure, and operate the Accused Products in an infringing manner.

103.     On information and belief, Defendants have had knowledge of the Asserted Patents at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S. Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

104.     On information and belief, Defendants have contributorily infringed and continue to contributorily infringe the '532 Patent pursuant to 35 U.S.C. § 271(c). With knowledge of the '532 Patent, Defendants have made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constitute a material part of the patented invention, are especially made or especially adapted for use in an infringing manner, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

105.     On information and belief, Defendants' users and customers directly infringe the '532 Patent without limitation when they use the Accused Products as intended by Defendants to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

106.    On information and belief, Defendants provide and disseminate information and technical support, including promotional materials, online documentation, product datasheets, configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encourage and assist customers and users to engage in the infringing use described above.

107.    Defendants' acts of direct, induced, and contributory infringement have occurred and continue to occur in the United States, including in this District, and have injured and damaged Plaintiff.

108.    Alternatively, since at least the date of this Complaint, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '532 Patent but took deliberate actions to avoid learning of these facts.

109.    On information and belief, Defendants' Accused Products were and are available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District.

110.    Defendants have irreparably injured and damaged Plaintiff by infringing one or more claims of the '532 Patent.

111.    Defendants' infringement of the '532 Patent has been willful at least from the time Defendants obtained knowledge of the '532 Patent, including no later than the filing of this Complaint and before based on Alcatel-Lucent's forward citation of the application leading to the '303 Patent during prosecution of its own patents. Nokia acquired this institutional knowledge upon its 2016 acquisition of Alcatel-Lucent, and such conduct merits enhanced damages pursuant to 35 U.S.C. § 284.

112.    A representative claim chart attached hereto as Exhibit 13 describes how the elements of claim 10 of the '532 Patent are practiced by one of the Accused Instrumentalities. This provides details regarding only one example of Defendants' infringement, and only as to a single independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

113.    Plaintiff has suffered and continues to suffer damages as a result of Defendants' infringement of the '532 Patent. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

## COUNT VI
## INFRINGEMENT OF U.S. PATENT NO. 7,808,931

114.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

115.    Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine of equivalents infringe at least one claim of the '931 Patent by making, using, testing, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

116.    Defendants, under 35 U.S.C. § 271(b), have induced and continue to induce third parties, including telecommunications carriers, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least one claim of the '931 Patent by using the Accused Products in an infringing manner.

117.    Defendants' inducement is knowing and intentional. Defendants have taken active steps to encourage infringing use, including by providing documentation, technical manuals,

configuration guides, deployment assistance, training, and technical support that instruct customers and users how to deploy, configure, and operate the Accused Products in an infringing manner.

118.    On information and belief, Defendants have had knowledge of the Asserted Patents at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S. Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

119.    On information and belief, Defendants have contributorily infringed and continue to contributorily infringe the '931 Patent pursuant to 35 U.S.C. § 271(c). With knowledge of the '931 Patent, Defendants have made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constitute a material part of the patented invention, are especially made or especially adapted for use in an infringing manner, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

120.    On information and belief, Defendants' users and customers directly infringe the '931 Patent without limitation when they use the Accused Products as intended by Defendants to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

121.    On information and belief, Defendants provide and disseminate information and technical support, including promotional materials, online documentation, product datasheets,

configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encourage and assist customers and users to engage in the infringing use described above.

122.    Defendants' acts of direct, induced, and contributory infringement have occurred and continue to occur in the United States, including in this District, and have injured and damaged Plaintiff.

123.    Alternatively, since at least the date of this Complaint, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '931 Patent but took deliberate actions to avoid learning of these facts.

124.     On information and belief, Defendants' Accused Products were and are available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District.

125.    Defendants have irreparably injured and damaged Plaintiff by infringing one or more claims of the '931 Patent.

126.    Defendants' infringement of the '931 Patent has been willful at least from the time Defendants obtained knowledge of the '931 Patent, including no later than the filing of this Complaint and before based on Alcatel-Lucent's forward citation of the application leading to the '303 Patent during prosecution of its own patents. Nokia acquired this institutional knowledge upon its 2016 acquisition of Alcatel-Lucent, and such conduct merits enhanced damages pursuant to 35 U.S.C. § 284.

127.    A representative claim chart attached hereto as Exhibit 14 describes how the elements of claim 29 of the '931 Patent are practiced by one of the Accused Instrumentalities. This

provides details regarding only one example of Defendants' infringement, and only as to a single independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

128.    Plaintiff has suffered and continues to suffer damages as a result of Defendants' infringement of the '931 Patent. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

**COUNT VII**
**INFRINGEMENT OF U.S. PATENT NO. 7,876,673**

129.    Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint.

130.    Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine of equivalents infringe at least one claim of the '673 Patent by making, using, testing, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

131.    Defendants, under 35 U.S.C. § 271(b), have induced and continue to induce third parties, including telecommunications carriers, enterprise customers, and network operators in this District and throughout the United States, to directly infringe at least one claim of the '673 Patent by using the Accused Products in an infringing manner.

132.    Defendants' inducement is knowing and intentional. Defendants have taken active steps to encourage infringing use, including by providing documentation, technical manuals, configuration guides, deployment assistance, training, and technical support that instruct customers and users how to deploy, configure, and operate the Accused Products in an infringing manner.

133.    On information and belief, Defendants have had knowledge of the Asserted Patents at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S. Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

134.    On information and belief, Defendants have contributorily infringed and continue to contributorily infringe the '673 Patent pursuant to 35 U.S.C. § 271(c). With knowledge of the '673 Patent, Defendants have made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constitute a material part of the patented invention, are especially made or especially adapted for use in an infringing manner, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

135.    On information and belief, Defendants' users and customers directly infringe the '673 Patent without limitation when they use the Accused Products as intended by Defendants to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

136.    On information and belief, Defendants provide and disseminate information and technical support, including promotional materials, online documentation, product datasheets, configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encourage and assist customers and users to engage in the infringing use described above.

137.    Defendants' acts of direct, induced, and contributory infringement have occurred and continue to occur in the United States, including in this District, and have injured and damaged Plaintiff.

138.    Alternatively, since at least the date of this Complaint, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '673 Patent but took deliberate actions to avoid learning of these facts.

139.    On information and belief, Defendants' Accused Products were and are available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District.

140.    Defendants have irreparably injured and damaged Plaintiff by infringing one or more claims of the '673 Patent.

141.    Defendants' infringement of the '673 Patent has been willful at least from the time Defendants obtained knowledge of the '673 Patent, including no later than the filing of this Complaint and before based on Alcatel-Lucent's forward citation of the application leading to the '303 Patent during prosecution of its own patents. Nokia acquired this institutional knowledge upon its 2016 acquisition of Alcatel-Lucent, and such conduct merits enhanced damages pursuant to 35 U.S.C. § 284.

142.    A representative claim chart attached hereto as Exhibit 15 describes how the elements of claim 18 of the '673 Patent are practiced by one of the Accused Instrumentalities. This provides details regarding only one example of Defendants' infringement, and only as to a single independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

143.    Plaintiff has suffered and continues to suffer damages as a result of Defendants'
infringement of the '673 Patent. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284
for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but
no less than a reasonable royalty.

## COUNT VIII
## INFRINGEMENT OF U.S. PATENT NO. 8,009,684

144.    Plaintiff realleges and incorporates by reference the allegations of the preceding
paragraphs of this Complaint.

145.    Defendants, under 35 U.S.C. § 271(a), directly, literally, and/or under the doctrine
of equivalents infringed at least one claim of the '684 Patent during its term by making, using,
testing, selling, offering for sale, and/or importing into the United States the Accused
Instrumentalities. The '684 Patent expired on March 2, 2026, and Plaintiff seeks damages only for
infringement occurring before that date.

146.    Defendants, under 35 U.S.C. § 271(b), induced third parties, including
telecommunications carriers, enterprise customers, and network operators in this District and
throughout the United States, to directly infringe at least one claim of the '684 Patent by using the
Accused Products in an infringing manner during the term of the '684 Patent.

147.    Defendants' inducement was knowing and intentional during the term of the '684
Patent. Defendants took active steps to encourage infringing use, including by providing
documentation, technical manuals, configuration guides, deployment assistance, training, and
technical support that instructed customers and users how to deploy, configure, and operate the
Accused Products in an infringing manner.

148.    On information and belief, Defendants have had knowledge of the Asserted Patents
at least since the filing of this Complaint and before based on Alcatel-Lucent's citation of U.S.

Patent Application Publication No. 2008/0049764 (the published application for the '303 Patent) during prosecution of Alcatel-Lucent's own patent application, which was published as U.S. Patent Application Publication No. 2008/0225695 and subsequently issued as U.S. Patent No. 7,782,763, entitled "Failure Protection in a Provider Backbone Bridge Network Using Forced MAC Flushing." Nokia acquired Alcatel-Lucent in 2016 and thereby acquired institutional knowledge of the Asserted Patents.

149.    On information and belief, Defendants contributorily infringed the '684 Patent pursuant to 35 U.S.C. § 271(c) during its term. With knowledge of the '684 Patent, Defendants made, used, offered for sale, sold, and/or imported into the United States the Accused Products, which constituted a material part of the patented invention, were especially made or especially adapted for use in an infringing manner, and were not staple articles or commodities of commerce suitable for substantial noninfringing use.

150.    On information and belief, Defendants' users and customers directly infringed the '684 Patent during its term when they used the Accused Products as intended by Defendants to deploy and operate carrier-grade Ethernet transport networks, ring network architectures, and packet-based network infrastructure incorporating the patented technologies.

151.    On information and belief, during the term of the '684 Patent, Defendants provided and disseminated information and technical support, including promotional materials, online documentation, product datasheets, configuration guides, deployment manuals, training materials, videos, demonstrations, and website materials that encouraged and assisted customers and users to engage in the infringing use described above.

152.    Defendants' acts of direct, induced, and contributory infringement of the '684 Patent occurred in the United States, including in this District, during the term of the '684 Patent and injured and damaged Plaintiff.

153.    Alternatively, during the term of the '684 Patent, Defendants knew that there was a high probability that the importation, distribution, sale, offer for sale, and use of the Accused Products constituted direct infringement of the '684 Patent but took deliberate actions to avoid learning of these facts.

154.     On information and belief, Defendants' Accused Products were available to businesses, telecommunications carriers, and other entities throughout the United States and in the State of Texas, including in this District, during the term of the '684 Patent.

155.    Defendants have injured and damaged Plaintiff by their infringement of one or more claims of the '684 Patent during its term. Because the '684 Patent has expired, Plaintiff does not seek injunctive relief with respect to this patent.

156.    Defendants' infringement of the '684 Patent was willful from the time Defendants obtained knowledge of the '684 Patent through the expiration of the '684 Patent on March 2, 2026. Defendants' knowledge includes, no later than Alcatel-Lucent's forward citation of the application leading to the '303 Patent during prosecution of its own patents, which institutional knowledge Nokia acquired upon its 2016 acquisition of Alcatel-Lucent. Such willful conduct during the term of the '684 Patent merits enhanced damages pursuant to 35 U.S.C. § 284.

157.    A representative claim chart attached hereto as Exhibit 16 describes how the elements of claim 14 of the '684 Patent are practiced by one of the Accused Instrumentalities. This provides details regarding only one example of Defendants' infringement, and only as to a single

independent claim, and Plaintiff reserves its right to provide greater detail and scope via its Infringement Contentions at the time required under this Court's Local Rules and scheduling order.

158.    Plaintiff has suffered damages as a result of Defendants' infringement of the '684 Patent during its term. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for Defendants' past infringement, but no less than a reasonable royalty.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A.    A judgment that Defendants have directly infringed, either literally and/or under the doctrine of equivalents, the Asserted Patents set forth in this Complaint, and, with respect to the unexpired Asserted Patents, continue to directly infringe such patents;

B.    A judgment that Defendants have actively induced infringement of the Asserted Patents set forth in this Complaint during their respective terms, and, with respect to the unexpired Asserted Patents, continue to induce infringement of such patents;

C.    A judgment that Defendants have contributorily infringed the Asserted Patents set forth in this Complaint during their respective terms, and, with respect to the unexpired Asserted Patents, continue to contributorily infringe such patents;

D.    A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including without limitation both convoyed and derivative sales, as well as supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

E.    A judgment that Defendants' infringement of each of the Asserted Patents was willful during their respective terms;

F.      A judgment that Defendants' infringement warrants enhanced damages pursuant to 35 U.S.C. § 284;

G.      A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

H.      An accounting for acts of infringement and supplemental damages for infringement and/or damages not presented at trial, including, without limitation, pre-judgment and post-judgment interest on the damages awarded;

I.      A judgment and order awarding a compulsory ongoing royalty with respect to the unexpired Asserted Patents;

J.      A judgment and order awarding Plaintiff costs associated with bringing this action;

K.      A judgment granting a permanent injunction with respect to the unexpired Asserted Patents that restrains and enjoins Defendants, their officers, directors, divisions, employees, attorneys, agents, servants, licensees, parents, subsidiaries, successors, assigns, and all those in privity, concert, or participation with them from directly or indirectly infringing the Asserted Patents;

L.      A judgment and order requiring Defendants to pay pre-judgment and post-judgment interest on any damages award at the maximum rate allowed by law;

M.      All equitable relief the Court deems just and proper; and

N.      Such other relief which may be requested and to which the Plaintiff is entitled.

## JURY DEMAND

Plaintiff requests that all claims and causes of action raised in this Complaint against Defendants be tried to a jury to the fullest extent possible.

Date: March 13, 2026

Respectfully submitted,

/s/ Erick S. Robinson
Erick S. Robinson (Lead Counsel)
Texas Bar No. 24039142
Gregory Love
Texas Bar No. 24013060
**CHERRY JOHNSON SIEGMUND JAMES PC**
104 E Houston Street, Suite 115
Marshall, Texas 75670
Tel: (713) 498-6047
Fax: (713) 583-9737
erobinson@cjsjlaw.com
glove@cjsjlaw.com

Mark D. Siegmund
Texas Bar No. 24117055
"Grace" Shuya Yang
Texas Bar No. 24144144
**CHERRY JOHNSON SIEGMUND JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Tel: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com
gyang@cjsjlaw.com

Jack Shaw (admitted in this District)
California Bar No. 309382
**CHERRY JOHNSON SIEGMUND JAMES PC**
3000 El Camino Real
Four Palo Alto Square, Suite 200
Palo Alto, CA 94306
Tel: (254) 732-2242
Fax: (866) 627-3509
jshaw@cjsjlaw.com

Ryan Loveless
Texas Bar No. 24036997
**CHERRY JOHNSON SIEGMUND JAMES PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Tel: (972) 987-0709
Fax: (866) 627-3509
rloveless@cjsjlaw.com

*Attorneys for Plaintiff*
*HIGH IQ NETWORKS LLC*